IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| NYDIA DeFRIETAS,<br><br>    Plaintiff,<br><br>vs.<br><br>HORIZON INVESTMENT & MANAGEMENT CORP. & JAMES TERRY,<br><br>    Defendants. | **MEMORANDUM OPINION AND ORDER**<br><br>Case No. 2:06-CV-926<br><br>Judge Dee Benson |

This case arises from the alleged wrongful termination of Plaintiff Nydia DeFrietas by Defendants Horizon Investment & Management Corporation and James Terry, in violation of the Family Medical Leave Act ("FMLA") and Title VII.  Plaintiff argues that she was fired by Defendants as a result of exercising her right to sick leave under FMLA and because she is not a member of the Church of Jesus Christ of Latter-Day Saints ("Mormon Church").  Presently before the Court is Defendants' motion for summary judgment, Plaintiff's motion for partial summary judgment, and Plaintiff's first and second motions to strike. The Court will address each of these motions in turn.

**Factual Background**

Defendant Horizon Investment & Management Corporation ("Horizon") is a property management company overseeing the operation of apartment complexes in Utah and Nevada. Plaintiff was hired by Horizon in June of 2004 to manage the Ridgeview apartment complex located in Ogden, Utah.  In September of 2005, Plaintiff was promoted to the position of Regional Manager, where she oversaw the operations of two different Horizon properties.

In July of 2005, Plaintiff was diagnosed with a medical condition that required a hysterectomy. Plaintiff notified her supervisor at Horizon, Defendant James Terry ("Mr. Terry"), of her condition and requested a leave of absence to have the surgery performed and to recuperate. Mr. Terry accommodated her request and allowed Plaintiff to have paid sick leave for much of her needed time off. Although Plaintiff's doctor told her that she would need six weeks to recover from the surgery, Plaintiff alleges that both she and Mr. Terry believed that she would return to work early, and would not be away from work for the entire six weeks.

The surgery was performed on February 15, 2006. Three weeks later, on March 9, Plaintiff's doctor told her that recovery was going slow and that she would need to take the full six weeks to recover. Plaintiff claims that she notified Mr. Terry of this that same day – that she would in fact need six weeks off and that she would not return to work until April 4, 2006.[1] On March 10, Plaintiff was terminated from Horizon through an email sent by Mr. Terry. Plaintiff brings the present lawsuit alleging: (1) interference with her rights under FMLA; (2) disparate treatment and religious discrimination under Title VII; and (3) hostile work environment under Title VII.

**Analysis**

**I.    Defendants' Motion for Summary Judgment**

Defendants argue that when the undisputed facts of this case are examined, no reasonable juror could find in favor of Plaintiff on any of the above causes of action. Therefore, Defendants contend that summary judgment should be granted in their favor.

---

[1]Defendant James Terry disputes this fact. He alleges that it was always understood that Plaintiff would take six weeks off to recover from her surgery and that this "supposed" March 9 conversation between him and Plaintiff never took place.

### A.     Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure allows for the entry of summary judgment if the evidence in the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Tenth Circuit has explained that when applying this standard the court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). This does not mean, however, that the existence of a mere scintilla of evidence in support of the non-moving party's position is enough to overcome summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "[T]here must be evidence in which the jury could reasonably find for the [non-moving party]." *Id.*

### B.     FMLA: Interference

The FMLA entitles an eligible employee to a take up to twelve weeks of unpaid leave in any twelve month period for, among other things, a serious medical condition. 29 U.S.C. § 2612(a)(1). Under FMLA, it is unlawful "for an[] employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the FMLA statute]." 29 U.S.C. § 2615(a)(1). This includes the discharge of an employee for exercising her right to leave. *See* 29 U.S.C. § 2615(a)(2). Plaintiff alleges that her termination while she was on sick leave constitutes interference in violation of her FMLA rights.[2]

---

[2] At oral argument, Plaintiff contended that her claim is for both interference and retaliation under FMLA. A plain reading of Plaintiff's Complaint, however, shows that Plaintiff has pled only one cause of action under FMLA, and that is a claim for interference. *See* Plaintiff's Complaint, pg. 1, Dkt. No. 1.

To prevail on an interference claim, Plaintiff must demonstrate: "(1) that [she] was entitled to FMLA leave, (2) that some adverse action by the employer interfered with [her] right to take FMLA leave [or reinstatement], and (3) that the employer's action was related to the exercise or attempted exercise of [her] FMLA rights." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006). Once this prima facie case for interference has been established, the burden then shifts to Defendants to prove that Plaintiff would have been terminated regardless of her taking FMLA leave. *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 963 (10th Cir. 2002).[3]

Here, Plaintiff was an "eligible employee" under the Act, *see* 29 U.S.C. § 2611(2), and was suffering from a health condition that made her unable to perform the functions of her job. *See* 29 U.S.C. § 2612(a)(1)(D). Therefore, Plaintiff was entitled to FMLA leave and has established the first element of her prima facie case. With regard to the second element, a deprivation of a "FMLA-created right to medical leave or to reinstatement following the leave," constitutes interference regardless of the employer's intent. *Smith*, 298 F.3d at 960. Accordingly, by terminating Plaintiff while she was on FMLA leave, thereby not allowing her to return to her position upon recovery, Defendants interfered with Plaintiff's FMLA rights.

Plaintiff has likewise established a prima facie basis for the third element. Because of the timing of her termination, Defendants' action may be related to the exercise of Plaintiff's FMLA rights. Accordingly, the Court finds that Plaintiff has demonstrated a prima facie case of interference.

---

[3] In the Tenth Circuit, the *McDonnell Douglas* burden-shifting analysis does not apply to interference claims. *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006) (citing *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 963 (10th Cir. 2002).

As stated above, however, FMLA is not a strict liability statute. It does not prohibit an employer from terminating an employee while on leave, it simply prohibits an employer from terminating an employee for the reason of taking leave. *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1262 (10th Cir. 1998) ("[A]n employee who requests FMLA leave has no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request."). In other words, "an employee may be dismissed, preventing her from exercising her statutory right to FMLA leave [or reinstatement after leave] . . . if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Metzler*, 464 F.3d at 1180 (quoting *Smith*, 298 F.3d at 961).

The undisputed facts fail to establish a basis upon which any reasonable factfinder could find that Plaintiff was terminated for the reason of taking leave. The only evidence in support of this claim is the close temporal proximity of Plaintiff's leave with her termination. In contrast, there is substantial evidence that Plaintiff's termination was for cause and was unrelated to her taking leave. Notes taken from Mr. Terry's day planner illustrate that beginning in January of 2006, Mr. Terry began receiving repeated complaints from both customers and employees regarding Plaintiff's sub-standard work. *See* Plaintiff's Memo in Opposition, Exh. 3, Dkt. No. 44. Plaintiff herself has acknowledged that she had a poor reputation among her co-workers. *See* Plaintiff's Memo in Support of Partial Summary Judgment, pg. 5, Dkt. No. 34.

Mr. Terry also received repeated complaints from the owner of the Park Place Apartments – one of the properties for which Plaintiff was responsible – regarding its management. These complaints included high staff turnover and errors in financial coding.

Plaintiff's Memo in Opposition, Ex. 12, pgs. 2-3, Dkt. No. 44.  Mr. Terry testified that Plaintiff's inability to remedy these and other problems related to Park Place was another cause for her termination.  *See* Defendants' Memo in Support, Exh. 2, pg. 49, lines 3-6, Dkt. No. 35. Additionally, Lyman Adams, the Chief Operational Officer of Horizon responsible for the company's financials, testified that he repeatedly discussed with Mr. Terry his concern regarding Plaintiff's compliance with the requirements of the low income housing tax credits.  Defendants' Memo in Support, Ex. 3, pg. 34 Dkt. No. 35. Mr. Adams feared that Plaintiff was manipulating certain tax credit documents, thereby jeopardizing the tax credit status of Horizon's clients and exposing Horizon to significant liability.  *Id.* at 30-31; 42-43; 56-57.

Although the timing of Plaintiff's termination was enough to establish a prima facie case of interference, it is not enough by itself to overcome summary judgment.  In contrast to Plaintiff's scintilla of evidence in support of her claim, the record is replete with examples of Plaintiff's poor work performance and her difficulty of getting along with co-workers and clients.  Accordingly, Plaintiff has failed to present sufficient evidence upon which a jury could reasonably find interference under FMLA.  Therefore, Plaintiff's interference claim fails as a matter of law and summary judgment is appropriate.[4]

---

[4] As explained above, Plaintiff's belated attempt to state a claim for retaliation finds no support in the pleadings.  Even if such a claim had been properly made, however, it would fail for most of the same reasons stated above.  Unlike interference claims, claims for retaliation under FMLA are subject to the *McDonnell Douglas* burden shifting analysis.  *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).  This means that once Defendants have offered a "legitimate, non-retaliatory reason for the employment action," the burden then shifts to Plaintiff to demonstrate that Defendants' "proffered reason is pretextual." *Id*.

Even applying this higher standard, however, Plaintiff has failed to provide sufficient evidence to overcome summary judgment.  Plaintiff argues that the timing of her termination and Defendants' failure to follow its own progressive procedures regarding discipline, establish that

### C.      Title VII: Disparate Treatment & Hostile Work Environment

Under Title VII of the 1964 Civil Rights Act, it is unlawful for an employer to "discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, *religion*, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). Plaintiff alleges that as a Catholic in a predominantly Mormon-run company she was often treated badly and ultimately terminated because of her religion. Plaintiff, therefore, seeks recovery under Title VII based on: (1) disparate treatment/ religious discrimination, and (2) hostile work environment.

---

Defendants' stated reasons for terminating Plaintiff are pretextual. But the Tenth Circuit has never allowed "even very close temporal proximity to operate as a proxy for the evidentiary requirement that the plaintiff demonstrate pretext." *Id*. at 1172 (quoting *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1241 (10th Cir. 2004)). In other words, to show pretext Plaintiff "must . . . present evidence of temporal proximity *plus* circumstantial evidence of retaliatory motive." *Id*.

    With regard to Defendants' failure to give Plaintiff a written warning or a probationary period before termination, Horizon's Manual of Operations specifically states that an exception to a written warning or probation "would be an employee caught . . . manipulating records, etc. Under those circumstances, termination is immediate." Defendants' Memo in Opposition, Exh. 12, Dkt. No. 45. The record illustrates that Defendants had a legitimate concern that Plaintiff was in fact manipulating records by inaccurately filling out the low income housing tax credit forms. Based on this, progressive discipline was entirely discretionary and no evidence of pretext exists.

    Plaintiff seems to also argue that Defendants' admitted lack of knowledge regarding the requirements of FMLA and the fact that Jonathon Morse, the owner of Park Place, never specifically requested Plaintiff be fired as Defendants alleged, also shows pretext. These arguments also lack merit. The issue in this case is not whether Defendants knew about the requirements of FMLA, the issue is whether Plaintiff was denied leave or whether she was fired because she took leave. Furthermore, it is undisputed that Mr. Morse was unhappy with the management of Park Place. Therefore, it was not unreasonable for Defendants to hold Plaintiff, who was the Regional Manager over Park Place, accountable for its performance.

**1.      Disparate Treatment/ Religious Discrimination**

A disparate treatment/ religious discrimination claim is subject to the *McDonnell Douglas* burden-shifting analysis. *See Lyons v. Red Roof Inns, Inc.*, 130 Fed.Appx. 957, 960 (10th Cir. 2005). Under this analysis, Plaintiff bears the initial burden of establishing a prima facie case of religious discrimination. Once Plaintiff has established a prima facie case of religious discrimination, the burden then shifts to Defendants to demonstrate that they had a legitimate, non-discriminatory "reason for the employment action." *Metzler*, 464 F.3d at 1170 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). Plaintiff "then bears the ultimate burden of demonstrating that [Defendants'] proffered reason is pretextual." *Id*.

Plaintiff may establish a prima facie case of discriminatory discharge by showing that: "(1) she is a member of a protected class; (2) she was qualified to perform her job; (3) despite her qualifications, she was discharged; and (4) the job was not eliminated after her discharge."[5] *Lyons*, 130 Fed.Appx. at 960. Defendants concede that Plaintiff is a member of a protected class, was discharged from her job, and that her job was not eliminated after her discharge. Defendants contend, however, that at the time Plaintiff was fired, she was no longer qualified for her position. Therefore, Defendants argue that Plaintiff cannot establish a prima facie case of discriminatory discharge and summary judgment is appropriate.

---

[5]Plaintiff argues that providing proof that she is qualified for her position is only necessary in causes of action for a wrongful failure to hire or promote. Plaintiff's Memo in Opposition, pg. 21 n.1, Dkt. No. 44. Tenth Circuit law is clear, however, that a prima facie case of discriminatory discharge includes a showing that the employee was qualified for the job. *See Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999); *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1174-75 (10th Cir. 1996); *Lujan v. New Mexico Health & Social Servs. Dep't*, 624 F.2d 968, 970 (10th Cir. 1980).

The undisputed facts, however, provide an adequate basis to establish a prima facie case that Plaintiff was a competent Regional Manager and was qualified for the position from which she was terminated. For example, Mr. Terry testified that Plaintiff was "very, very good at what she did." Plaintiff's Memo in Opposition, Exh. 1, pg. 52, Dkt. No. 44. Furthermore, in the summer of 2005, Mr. Terry gave Plaintiff a substantial raise in exchange for her promise to stay with Horizon. Although problems clearly existed within Horizon that related to Plaintiff, the Court finds that as a general matter Plaintiff was qualified to perform her job. Therefore, Plaintiff has established a prima facie case of religious discrimination.

Shifting the burden to Defendants, Defendants must demonstrate a legitimate, non-discriminatory reason for terminating Plaintiff. As clearly articulated in section I.B above, Defendants have met this burden. They have given several legitimate, non-discriminatory reasons for why Plaintiff was terminated. These include her inability to get along with co-workers and clients, her inability to manage Park Place in a manner that satisfied its owner, and Defendants' reasonable suspicions that she was inaccurately filling out low income housing tax credit forms. Having met their burden, the burden then shifts to Plaintiff to establish that Defendants' stated reasons for terminating her are pretextual.

Plaintiff argues that there is substantial indirect evidence to support a finding of pretext. The subject line of Plaintiff's termination email was a Bible verse directly relevant to her. Her religion was a topic of conversation within Horizon from her first day of work. Mr. Terry frequently made reference to hiring returned Mormon Missionaries. Around the same time that Plaintiff was terminated, five other Catholic employees of Horizon were also terminated.

9

As stated previously, to establish pretext one must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Defendants'] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1999) (quotation omitted). With respect to a claim of disparate treatment, "[p]roof of discriminatory motive is critical." *Carino v. Univ. of Okla. Bd. of Regents*, 750 F.2d 815, 818 (10th Cir. 1984). None of the evidence that Plaintiff has provided indicates that Defendants acted with discriminatory motives or for a reason not stated.

The subject line of Plaintiff's termination email was "Ecclesiastes 3." This verse has direct relevance to all religions that believe in the Bible, including Mormons and Catholics. The first line of this verse reads: "To every thing there is a season . . . ." A clear implication to Plaintiff that her time with Horizon had come to an end. Although this subject line clearly lacked tact, it in no way showed a discriminatory motive towards Catholics. It was simply Mr. Terry's inartful attempt at drafting a civil termination email.

With respect to Plaintiff's allegation that five other Catholics were also terminated at about the same time, the record shows that only three were actually terminated, and that all three were family members working together as maintenance personnel at the same property. There is no evidence in the record that they were either treated poorly or terminated based on religious discrimination. To be sure, the only evidence in the record supporting religious discrimination toward these maintenance personnel is Plaintiff's own testimony that these workers felt that Plaintiff herself treated them differently because they were not members of the Mormon church.

Plaintiff's Memo in Support of Partial Summary Judgment, Exh. 1, pgs. 116-17, Dkt. No. 34 ("[T]hey felt that I favored the LDS staff over them.").

In contrast, there is evidence that these maintenance personnel were fired for cause. Mr. Terry testified that they had several issues with these maintenance workers, including inappropriate behavior and poor work. *See* Defendants' Memo in Support of Summary Judgment, Exh. 2, pgs. 63:10-18, 57:2-24, 139:13-18, Dkt. No. 35. Therefore, because Plaintiff has provided no evidence to contradict the reasons given by Mr. Terry for terminating these maintenance personnel, other than to say they were Catholic, no factfinder could reasonably question the credence of Mr. Terry's stated reasons. Accordingly, the terminations of these three maintenance personnel do not establish pretext.

The remaining evidence that Plaintiff presents is similarly insufficient to support a finding of pretext. Although Defendants may have referenced hiring returned Mormon Missionaries and religion may have been a frequent topic among Plaintiff and her co-workers, there is no evidence in the record of any discriminatory intent from Defendants toward Plaintiff. There is no evidence in the record that Plaintiff's Catholic faith affected her hiring, her promotions, her treatment within the company, and most importantly her termination. To the contrary, Plaintiff was promoted within Horizon to the position of Regional Manager in just over a year, was given a substantial raise to stay with Horizon, and was referred to as "one of [Mr. Terry's] favorite[]" employees. Plaintiff's Memo in Opposition, Exh. 1, pg. 52:18, Dkt. No. 44. The undisputed facts fail to establish a basis upon which any reasonable factfinder could find that Plaintiff was terminated based on religious discrimination. Accordingly, Plaintiff's disparate treatment/ religious discrimination claim fails as a matter of law.

### 2. Hostile Work Environment

To establish a claim for hostile work environment, Plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78 (1998) (quotations omitted). The analysis applied to these situations is an objective, reasonable person test, considering all the circumstances. *See id.* at 81. "These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993).

Plaintiff contends that as a Catholic in a predominantly Mormon-run company, she was subjected to a hostile work environment. Specifically, Plaintiff alleges: that she was Catholic while all her supervisors were Mormon; that she often felt compelled to join in religious conversations while at work; that Mr. Terry told her that returned Mormon Missionaries were good salespeople and would thus be good hires; that upon returning to work after maternity leave Mr. Terry stated that "most good Mormon girls . . . stay at home with their children"; and that before her surgery she was offered a Book of Mormon and a Mormon blessing from another employee. Plaintiff's Memo in Opposition, Exh. 2, pgs. 80-83, 97-98, Dkt. No. 44.

Accepting all of the above allegations as true, the question becomes whether this amounts to discriminatory intimidation, ridicule, and insult so as to "alter the conditions of [Plaintiff's] employment and create an abusive working environment." *Oncale*, 523 U.S. at 78 (quotations omitted). The Supreme Court has "made it clear that conduct must be extreme to amount to a

change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "Complaints attacking the ordinary tribulations of the workplace, such as sporadic use of abusive language . . . and occasional teasing," should be filtered out. *Id.* (quotations omitted). None of the above allegations constitute discriminatory intimidation or ridicule. In fact, Plaintiff herself testified that she was never ridiculed at work. Plaintiff's Memo in Opposition, Exh. 2, pg. 120, Dkt. No. 44. Although some of these statements may have been insulting to Plaintiff, the evidence shows that they were sufficiently isolated that a reasonable juror could not conclude they pervaded Plaintiff's work place. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998).

Plaintiff has produced no evidence that she was intimidated or ridiculed as a result of her faith. The insults that Plaintiff did endure in the workplace, are nothing more than the "ordinary tribulations" of being in the workforce. *Faragher*, 524 U.S. at 788. Sporadic invitations to attend church with a co-worker, while uncomfortable, do not constitute a hostile work environment.

### D. Conclusion

After reviewing the undisputed facts, the Court finds that no reasonable juror could find in favor of Plaintiff on any of her three causes of action. Therefore, Defendants' motion for summary judgment is GRANTED.

## II. Plaintiff's Motion for Partial Summary Judgment

Plaintiff has filed a motion for partial summary judgment seeking to strike Defendants' third, fifth, sixth, seventh, ninth, thirteenth, fourteenth, fifteenth, and sixteenth affirmative defenses. Plaintiff argues that there is no genuine dispute as to any material fact regarding these

defenses. Defendants' concede that the sixth, seventh, and ninth affirmative defenses should be stricken. With regard to the other six affirmative defenses, however, Defendants contend that material issues of fact remain, and that there is insufficient evidence to support judgment as a matter of law. Having already granted Defendants' motion for summary judgment, thereby dismissing all counts of Plaintiff's complaint, Plaintiff's motion to strike these affirmative defenses is moot, and thus will not be addressed.

### III.     Plaintiff's First Motion to Strike

Plaintiff moves the Court to strike paragraphs 14, 16, 17, 18, 23, 29, 30, 41, 42, 49, 50, and 51 of Defendants' Memorandum in Support of summary judgment on the basis of hearsay, relevance, and foundation.

#### A.     Hearsay: Paragraphs 14, 16, 17, 18, 23, 29, 30, 49, & 50

Plaintiff argues that the above referenced paragraphs for Defendants' Memorandum in Support of Summary Judgment all contain inadmissible hearsay and should be stricken from the record. These paragraphs read as follows:

> 14.     While Ms. DeFrietas was absent from work and recuperating, Mr. Terry was approached by some employees who expressed concerns about Ms. DeFrietas' work performance.
>
> 16.     Mr. Terry based his decision to terminate Ms. DeFrietas on complaints by employees and a client, including swearing at employees and some tenants, threats Ms. DeFrietas made to a maintenance man, concerns about excessive hiring outside of Horizon for matters such as repairs, insurance mistakes, and refusal of her peers to work with her when she returned.
>
> 17.     Mr. Terry's biggest concern was to attempt to keep a contract between Horizon and property owner, Jonathon Morse, who was unhappy with Ms. DeFrietas.
>
> 18.     Mr. Morse informed Mr. Terry that he was concerned about Ms. DeFrietas.

      23.    Mr. Lyman also testified that he was concerned about Ms. DeFrietas' level of honesty. He felt that she manipulated tax credit documents, thereby jeopardizing the tax credit status of his clients, the owners of the apartments complexes.

      29.    Mr. Lyman clarified that Horizon's Compliance Department expressed concerns that tax compliance forms were altered improperly by Ms. DeFrietas and that she improperly wrote on the forms.

      30.    Mr. Terry called other Horizon regionals to see if they would work with Ms. DeFrietas. They declined.

      49.    The Department of Labor investigated Ms. DeFrietas' claims under the Family Medical Leave Act ("FMLA") and determined that Horizon did not violate Ms. DeFrietas rights under the FMLA. Horizon did, however, fail to incorporate information about the FMLA in its operating manual.

      50.    The Department of Labor investigator noted that Horizon agreed to implement the needed changes.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The Tenth Circuit has found that when an out-of-court statement is not offered to prove the truth of the matter asserted, but instead is offered to show its effect on the hearer, it is not hearsay under the Federal Rules of Evidence, and is admissible. *See Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1297 (10th Cir. 1998).

The statements made in paragraphs 14, 16, 17, 18, 23, 29, and 30 are not being offered for the truth of the matter asserted – that Plaintiff was a poor worker or that she committed any of the alleged acts. They are simply being offered to "establish the state of mind thereby induced in [Mr. Terry and Lyman Adams], such as receiving notice or having knowledge or motive, or to show the information which [Defendants] had as bearing on the reasonableness" and good faith of their decision to terminate Plaintiff. McCormick on Evidence, § 249 (6th ed. 2006) (citations

omitted). Therefore, none of these statements constitute hearsay, and are only being offered to show the effect they had on the hearer.

Paragraphs 49 and 50 do contain hearsay. However, these statements are derived from a public report generated by the Department of Labor and thus constitute an exception to the hearsay rule. Federal Rule of Evidence 803 states that the following are not excluded by the hearsay rule:

> (8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report . . . .

Fed. R. Evid. 803(8). Paragraphs 49 and 50 fit squarely within the Public Record hearsay exception.

Plaintiff, however, argues that this public record should nevertheless be excluded because it lacks trustworthiness. The Court finds this argument unpersuasive. The fact that Plaintiff did not get the amount of time she would have liked with the Department of Labor or that the investigation was cut somewhat short because of Plaintiff's choice to pursue her claims in court, does not indicate that the report is untrustworthy. Plaintiff was interviewed by the Department of Labor and information was gathered from all parties. The record is clear that the report contains "matters observed pursuant to duty imposed by law" on the Department of Labor. *Id*. Therefore, statements from the report are admissible pursuant to the Public Records exception to the hearsay rule.

### B. Relevance: Paragraphs 42 & 51

Plaintiff argues that paragraphs 42 and 51 contain statements that are irrelevant to any matter at issue in this lawsuit. Paragraphs 42 and 51 read as follows:

> 42. Ms. DeFrietas' medical history includes depression and anxiety, requiring treatment with medication.
>
> 51. Ms. DeFrietas describes herself as a "workaholic" while at Horizon and Pavillion.

Plaintiff contends that her medical history and work patterns have no relevance to whether her religion or request to take FMLA leave led to her termination. But the standard for determining whether evidence is relevant, is liberal. "'Relevant evidence' means evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added). Plaintiff has alleged hostile work environment, claiming that the religious epithets at work impacted her work performance. Evidence regarding physical limitations and alleged work patterns are directly relevant to Plaintiff's performance at work. Therefore, Plaintiff's motion to strike these paragraphs is denied.

### C. Foundation: Paragraph 41

Plaintiff argues that paragraph 41 should be stricken because it is unsupported by citation to the factual record as required by DUCiv.R. 56-1. DUCiv.R. 56-1(b) ("The facts must be numbered and refer with particularity to those portions of the record on which movant relies."). Paragraph 41 reads as follows:

> 41. The predominant religion in Utah is LDS.

The Court takes judicial notice of the fact that the predominant religion in Utah is Mormon. This fact is "not one subject to reasonable dispute in that it is . . . generally known within the territorial jurisdiction of the trial court . . . ." Fed. R. Evid. 201(b). Therefore,

Plaintiff's highly technical argument is denied, and paragraph 41 will not be stricken from the record.

### D. Conclusion

The facts offered by Defendant in their Memorandum in Support of Summary Judgment are relevant and admissible. Accordingly, Plaintiff's first motion to strike is DENIED.

## IV. Plaintiff's Second Motion to Strike

Defendants' and Plaintiff's motions for summary judgment in this matter were both filed on the same date. Plaintiff responded to Defendants' motion with a memorandum in opposition and a motion to strike (which was discussed above). In an effort to support the facts stated in their original motion for summary judgment, and undoubtedly in response to Plaintiff's first motion to strike, Defendants then filed a reply memorandum in which they attached previously unprovided declarations from Marlene Black, Candace Swanger and Keri Borst. Plaintiff asserts that these declarations were provided in violation of Fed. R. Civ. P. 56 and DUCiv.R. 56-1 and should be stricken.

DUCiv.R. 56-1(b) explains that: "[a] reply memorandum must be limited to rebuttal of matters raised in the opposing memorandum and must not exceed ten (10) pages." The declarations attached to Defendants' Reply were provided not to oppose any new arguments presented by Plaintiff in her Memorandum in Opposition, but rather were provided in support of Defendants' original summary judgment argument. The intent of DUCiv.R. 56-1 is clear. Parties moving for summary judgment must state in full, in their original supporting memorandum, the facts upon which they rely to support their motion. Their opponents then have the opportunity to state facts which create a genuine issue of fact. The moving party is then

permitted a reply memorandum, but only to rebut any new allegations presented by the non-moving party.  The rule does not contemplate that a moving party will continue to attach new evidence in support of their original argument.  Otherwise an endless chain of sur replies would ensue.

The declarations of Marlene Black, Candace Swanger, and Keri Borst, attached to Defendants' Reply Memorandum in support of summary judgment, have been submitted in violation of Fed. R. Civ. P. 56 and DUCiv.R. 56-1.  Plaintiff's second motion to strike, therefore, is GRANTED, and these declarations are stricken from the record.  Accordingly, the Court has not relied on any of these declarations in making its determination with regard to any of the above motions.

## Conclusion

In accordance with the above analysis, the Court GRANTS Defendants' motion for summary judgment, DENIES Plaintiff's first motion to strike, and GRANTS Plaintiff's second motion to strike.

IT IS SO ORDERED.

DATED this 24th day of January, 2008.

_____
Dee Benson
United States District Judge