# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **NYDIA DeFREITAS,** <br><br> Plaintiff, <br> vs. <br><br> **HORIZON INVESTMENT &** <br> **MANAGEMENT CORPORATION &** <br> **JAMES TERRY,** <br><br> Defendants. | **MEMORANDUM DECISION** <br> **AND ORDER** <br><br><br> Case No. 2:06CV926 DAK |

This matter is before the court on Plaintiff's Motion for Liquidated Damages, Plaintiff's Motion for Attorneys' Fees, and Plaintiff's Bill of Costs. Pursuant to local rule 7-1(f), the court has concluded that oral argument would not be helpful or necessary, and thus the court will determine the motion on the basis of the written memoranda. *See* DUCivR 7-1(f).

## I. BACKGROUND

This action was removed to this court and assigned to the Honorable Dee V. Benson on October 31, 2006. Plaintiff had asserted three causes of action, claiming (1) that the firing interfered with her rights under the under the Family and Medical Leave Act ("FMLA"); (2) that she was fired because she was not a member of the Church of Jesus Christ of Latter-day Saints ("LDS"), in violation of Title VII, and (3) that she was subjected to a work environment that was hostile to those who were not LDS, also in violation of Title VII. On January 24, 2008, the court granted Defendant's Motion for Summary Judgment on all three claims.

An appeal to the Tenth Circuit Court of Appeals followed, and on August 14, 2009, the

court affirmed the district court on the Title VII discrimination claim but reversed the district court on Plaintiff's FMLA claim.[1] On remand, Judge Benson recused, and the case was reassigned to the undersigned judge. On March 30, 2010, the court held a four-day jury trial. On April 2, 2010, the jury returned a verdict in favor of Plaintiff, awarding her $2,000 in damages. Plaintiff now moves for liquidated damages, attorneys' fees, and costs.

## II. DISCUSSION

### A. LIQUIDATED DAMAGES

The FMLA provides that an employer who violates the act *shall* be liable for liquidated damages in an amount equal to back pay plus prejudgment interest, unless it "proves to the satisfaction of the court that the act or omission . . . was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation" of FMLA. In such a situation, the court may, in its discretion, decline to award liquidated damages. *See* 29 U.S.C. §2617(a)(1)(A)(iii); *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 964 (10th Cir. 2002). This non-discretionary calculation of damages under the FMLA should not be considered a "windfall," but rather a congressional judgment, enforced by the courts, designed to compensate employees for the obscure damages that occur when one wrongfully loses wages, even if only temporarily. See *Jordan v. U.S. Postal Service*, 379 F.3d 1196, 1202 (10th Cir. 2004).

During the trial Defendant James Terry testified that he was unfamiliar with the FMLA

---

[1] On appeal, Plaintiff did not challenge the district court's dismissal of her hostile-work-environment claim.

and had not even been aware there was such a thing as the FMLA until the Plaintiff brought her claim. Further, the Defendants' Manual of Operations contained no reference to the FMLA and no leave provisions that matched the FMLA.

Defendants' lack of knowledge of the FMLA cannot be used as a shield to protect them from liability for liquidated damages. While the court does not believe that Defendants' actions were taken in bad faith, Defendants have not demonstrated that they had reasonable grounds for believing that their actions were not a violation of FMLA. *See, e.g., Cooper v. Fulton County*, 458 F.3d 1282, 1287 (11th Cir. 2006). When an employer admits that it is not aware of the FMLA, it cannot logically argue that it had reasonable grounds for believing that it was not violating the FMLA. Therefore, the court will award liquidated damages in the amount of $2,000, plus prejudgment interest.

**B. ATTORNEYS' FEES**

An award of fees to a prevailing plaintiff in an FMLA interference case is mandatory

> (3) Fees and costs. The court in such an action **shall**, in addition to **any** judgment awarded to the plaintiff, allow a reasonable attorneys' fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant."

29 U.S.C. § 2617(a)(3) (emphasis added). An award of fees is nondiscretionary, *Jordan v. U.S.P.S.*, 379 F.3d 1196, 1277 (10th Cir. 2004), but the amount of attorneys' fees awarded is at the trial court's discretion. *See Dotson v. Pfizer, Inc.* 558 F.3d 284, 303 (4th Cir. 2009). In the instant case, Plaintiff seeks $224,024.90 in attorneys' fees.

Defendants argue that the court must reduce the requested attorneys' fees for a variety of reasons. The two overriding concerns discussed by Defendants are that (1) Plaintiff's two

claims under Title VII were dismissed on summary judgment, yet fees are requested for work on those claims; and (2) Plaintiff's total award at trial was small, relative to the amount of fees incurred. In addition, Defendants contend that Plaintiff's attorneys have (1) requested inflated billing rates; (2) performed duplicative work, (3) billed for excessive hours; and (4) billed for clerical work billed at attorney rates.

To determine the reasonableness of a fee request, a court must begin by calculating the so-called "lodestar amount" of a fee. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir.1998). The lodestar calculation is the product of the number of attorney hours "reasonably expended" and a "reasonable hourly rate." *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The product of reasonable hours times a reasonable rate does not end the inquiry, however, of determining whether a fee is reasonable. *Chazez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1103 (10th Cir. 2005), *overruled on other grounds by Burlington Northern & Santa Fe R.R. Co. v. White*, 548 U.S. 53 (2006). A district court may also consider a number of other factors when adjusting a fee upward or downward, including the reasonableness of the fees in light of the success obtained. *Id*.

When a plaintiff succeeds on some claims but fails on others, the court must consider whether to adjust the lodestar to reflect the plaintiff's overall success level:

> The Supreme Court has instructed a fee award should be determined by examining "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." "Reasonably expended" hours would not include time spent on claims "unrelated" to those on which the plaintiff prevails. The *Hensley* court held that a plaintiff cannot receive fees for time spent on "distinctly different claims for relief that are based on different facts and legal theories" and on which the plaintiff does not succeed.

*Id.* at 1103 (internal quotations and citations omitted) (*quoting Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1253-54 (10th Cir. 1992)).

"Even when an award of attorneys' fees is mandatory, the district court may decrease the amount of fees that might otherwise be awarded in order to account for the plaintiff's limited success." *McDonnell v. Miller Oil Co. Inc.*, 134 F.3d 638, 640 (4th Cir. 1998). In *McDonnell*, the court emphasized that the Supreme Court has recognized that "'the most critical factor" in calculating a reasonable fee award "is the degree of success obtained,'" and when "'a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.'" *Id.* at 641 *(quoting Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) and *citing Farrar v. Hobby*, 506 U.S. 103, 114-15 (1992)).

The court agrees that the requested hours and fees are somewhat excessive. First, the court will reduce the number of hours spent by the various attorneys representing Plaintiff because (1) the requested hours include hours spent on Plaintiff's two unsuccessful Title VII claims, which were factually and legally distinct from her successful FMLA claim; and (2) the requested hours include some minimal time spent on talking to the client about a potential divorce case and possible protective order. In addition, the court will also disallow hours spent "on tasks that are easily delegable to non-professional assistance." *See Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999). The court notes that there are several entries pertaining to clerical tasks performed by attorneys (*i.e.*, "get case number from court letters"- 2/21/2008; "go to UPS store with Chris to ship all briefs . . .go to opposing counsel's

office in person to deliver their copies of briefs" - 5/9/2008; "deliver brief to printer" - 5/8/2008). Finally, there appears to be at least some duplication of work among the attorneys, although the court is cognizant of the fact that having more than one attorney work on a case is not necessarily duplicative. From the records provided, it is impossible for the court to calculate precisely the number of hours attributable to the unrelated claims, clerical work, and some duplication of effort, but the court finds it reasonable to reduce the number of hours spent by Robert H. Wilde and Bruce M. Franson by 30% to account for all these issues.[2] The court declines, however, to reduce the number of hours billed based on Plaintiff's limited success relative to the amount of attorneys' fees requested. Accordingly, the court will reduce the number of hours to the following: Mr. Wilde's hours are reduced from 232.70 to 162.89 and Mr. Franson's hours are reduced from 520.24 to 364.17.

The court also finds that the requested rates are somewhat high. Mr. Wilde has billed $350 per hour for his work on this case during the past four years. Mr. Franson has requested a billing rate of $260, although he had just been admitted to the bar a year prior to beginning his work on this case. Based on the parties' briefing, the declarations provided by both sides, and the court's knowledge of community rates, the court will award $325 per hour to Mr. Wilde and $225 per hour to Mr. Franson. Thus, the total fees awarded by the court amounts to ($325 x 162.89) + ($225 x 364.17) + $7,317.5 (for Mr. Goldstein and Ms. Young) = $52,939.25 + $81,938.25 + 7,317.5 = $142,195.00.

---

[2] The hours spent by Reed P. Goldstein (23.6 hours) and paralegal Chris Young (4.75) are negligible, and thus the court will not reduce those claimed hours or rates.

Finally, Defendants argue that any determination of a reasonable fee cannot be made without taking into account the Rule 68 Offer of Judgment and that they are entitled to their costs in light of the Offer of Judgment.

The Offer of Judgment was made in November 2006 in the amount of $5,000, including costs and attorneys fees.[3] Defendants claim that Plaintiff must pay their costs because this offer exceeded the $2,000 jury verdict. Defendants, however, are incorrect. Plaintiff received a $2,000 verdict, plus $2,000 in liquidated damages, bringing her recovery to $4,000. In addition, the Plaintiff's pre-offer attorneys' fees must also be included because Defendants chose to include such fees in the Rule 68 Offer of Judgment, which read:

> Pursuant to Fed. R. Civ. P. 68, Defendants, Horizon Investment & Management Corp. and James Terry, through counsel, hereby offer judgment to be taken against them by Plaintiff Nydia DeFrietas [sic] in the total amount of Five Thousand Dollars ($5,000.00), *which includes all costs, expenses, attorney fees, interest, and all other sums to which Plaintiff and her counsel may be entitled.* This offer shall remain for ten (10) days after service on counsel for Plaintiff.

Defendants' Offer of Judgment (emphasis added). At the time the offer was made, Plaintiff's counsel had invested 25.73 hours in her case with a total value of $7,645.80, and counsel had incurred costs of approximately $266. Rule 68(d) covers "costs" which must be paid if the offeree does not obtain a more favorable outcome than the offer. Thus, to gain any benefit from a Rule 68 Offer of Judgment, Defendants would have had to offer at least $11,811.80. Their $5,000 Offer of Judgment is therefore of no moment in this case. Defendants are not entitled to

---

[3] Defendants reference a second Offer of Judgment in the fall of 2009, but there is no evidence to support that assertion. If Defendants informally "renewed" their offer, such an offer has no Rule 68 consequences.

costs, and it was reasonable for Plaintiff to continue to litigate after the Offer of Judgment was made. Thus, the court will not adjust the attorneys' fees based on the Offer of Judgment.

**C. COSTS**

Plaintiff has filed a Bill of Costs, pursuant to Rule 54 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920. Rule 54(d) "codifies the presumption that . . . costs will be awarded to prevailing parties." *Police Retirement Sys. v. Midwest Inv. Advisory Serv.,* 940 F.2d 351,358-59 (8th Cir, 1991); see also *Chapman v. AI Transp.,* 229 F. 3d 1012, 1038-39 (11 th Cir. 2000). Plaintiff DeFreitas has filed a proper Bill of Costs, requesting $4,691.89 in total costs incurred in this litigation. Defendants have not objected to the Bill of Costs, and the time for doing so has passed.[4] Therefore, the court will award the requested costs in the amount of $4,691.89.

**CONCLUSION**

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Liquidated Damages [docket # 142] is GRANTED, and the court awards $2,000 in liquidated damages, plus prejudgment interest. Plaintiff's Motion for Attorneys' Fees [docket # 145] is GRANTED in part and DENIED in part. The court awards $142,195.00 in attorneys' fees. Finally, the court awards Plaintiff $4,691.89 in costs.

DATED this 22nd day of July, 2010.

---

[4] *See* DUCivR 54-2(b).

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge